(77 N. W. Rep. 97.)

---

CHARLES HOLLINSHEAD *vs.* JOHN STUART & CO.

Opinion filed May 27th, 1898.

### Negotiable Paper—Implied Notice of Transfer.

A debtor is chargeable with notice of the transfer by his creditor of a negotiable instrument on which he is maker, and thereafter he cannot safely pay the original creditor, although he is ignorant of such transfer.

### No Implied Notice of Transfer of Ordinary Debt.

The rule is otherwise as to an ordinary debt.

### Payment of Paper Without Its Production.

Whether, however, a debtor ignorant of a previous transfer can make final payment of the principal to one who is not at the time the owner of the claim (such claim being represented by a written instrument), without calling for the production of such instrument, and yet be protected as to such payment, is not decided.

### Increased Interest After Maturity—Does Not Destroy Negotiability.

A note otherwise negotiable is not rendered nonnegotiable by the fact that it provides that after maturity the rate of interest shall be higher, or by the further provision that in case of default in the payment of interest the holder of the note may, at his option, declare the whole principal due.

### Estoppel Against Owner of Paper.

After the payee of a note, and the mortgagee in the mortgage given to secure the same, had transferred them to another, the debtor, ignorant of such transfer, continued to pay the interest to

the original creditor; and the purchaser, by delivering the interest coupons to such original creditor, to be sent to the debtor by it, instead of sending them directly to the debtor, confirmed the debtor's belief that the original creditor was still the real creditor. *Held,* that the purchaser was estopped from setting up his ownership to defeat the subsequent payment of the principal by the debtor to the original creditor.

### No Ostensible Agency Created.

*Held,* further, that the debtor could not justify such payment on the ground that the purchaser had created an ostensible agency, because it appeared that the debtor did not deal with the original creditor as the agent of the purchaser, or assume that any such agency existed, but, on the contrary, dealt with such orginal creditor solely as the actual owner of the securities.

ON REHEARING.

### Payment of Negotiable Paper to Payee Without its Production and After Transfer No Defense.

The fact that an indorsee of a negotiable note with interest coupons attached forwarded the coupon notes, as the interest matured, to the original payee, to be delivered to the maker upon payment, and the further fact that such maker paid such coupon notes with the full belief on his part, but in the absence of all inquiry, that the original payee was the owner thereof, do not estop the indorsee, where the maker paid the principal to the original payee while the note remained in the hands of the indorsee, from setting up the indorsement to himself, or from denying all agency on the part of the payee to collect such note.

### Note Payable at Particular Office.

When a negotiable promissory note is made payable at a particular office, such fact does not constitute the party in charge of such office the agent of the holder of such note to receive the money thereon, unless such note is in the possession of such party.

Appeal from District Court, Barnes County; *Glaspell,* J.

Action by Charles Hollinshead against the Globe Investment Company, defendant, to secure the satisfaction of a certain mortgage and for the statutory penalty. John Stuart & Company intervened. Plaintiff purchased the mortgaged premises from William Glass and as part of the purchase price assumed and agreed to pay the mortgage thereon given by his grantor to the Globe Investment Company. Prior to the purchase of said property by plaintiff, the Globe Investment Company had assigned its mortgage to intervener and endorsed and delivered to intervener the notes by it secured. Plaintiff, without knowledge of intervener's ownership of the notes and mortgage, paid the amount secured to the Globe Investment Company. Plaintiff had judgment and intervener appealed.

Reversed.

*Morrill & Engerud,* for appellant.

The note in this case contains this provision: "If any interest

remains unpaid ten days after it becomes due, the principal shall at once become due, at the option of the holder, without notice." This provision does not render the note uncertain as to time of payment so as to destroy its negotiable character. § 4852, 4861, Rev. Codes; Daniels Neg. Inst. 41; *Wilson* v. *Campbell,* 68 N. W. Rep. 278; *Merrill* v. *Hurley,* 62 N. W. Rep. 958; *Kerr* v. *Morrison,* 25 S. W. Rep. 1011; *Crossmore* v. *Page,* 73 Cal. 213; *Roberts* v. *Snow,* 27 Neb. 425; *Ernst* v. *Steckman,* 74 Pa. 13; *Cisne* v. *Childeston,* 85 Ill. 523; *Charlton* v. *Reed,* 16 N. W. Rep. 64; *Walker* v. *Woolen,* 54 Ind. 164; *Capron* v. *Capron,* 44 Vt. 410; *Palmer* v. *Hummer,* 10 Kan. 464; *DeHass* v. *Roberts,* 59 Fed. Rep. 853; *Chicago, &c.* v. *Bank,* 136 U. S. 268. The transfer of the note carried with it the mortgage. Sec. 4707, Rev. Codes; *Lee* v. *Clark,* 1 S. W. Rep. 142; *Porter* v. *Ourada,* 71 N. W. Rep. 52. After transfer the mortgagee had no right to accept payment of the mortgage debt unless he was agent of the transferee. *Lee* v. *Clark,* 1 S. W. Rep. 142; *Brayley* v. *Ellis,* 32 N. W. Rep. 254.

Possession of the interest coupons for collection is not evidence of authority to collect the principal debt. *Wilson* .v. *Campbell,* 68 N. W. Rep. 278; Jones on Mortgages, 964; *Stark* v. *Olsen,* 63 N. W. Rep. 37; *Eggert* v. *Beyer,* 62 N. W. Rep. 57; *Porter* v. *Ourada,* 71 N. W. Rep. 52; *Richards* v. *Waller,* 68 N. W. Rep. 1053; *Joy* v. *Vance,* 62 N. W. Rep. 140; *Brayley* v. *Ellis,* 32 N. W. Rep. 254. If the instrument evidencing the debt is non-negotiable and the debtor, without notice of its transfer, pays the mortgagee, he is protected though an assignment of the mortgage is of record. *Porter* v. *Ourada,* 71 N. W. Rep 52; *Stark* v. *Olsen* 63 N. W. Rep. 37; *Williams* v. *Keyes,* 51 N. W. Rep. 520; *Eggert* v. *Beyer,* 62 N. W. Rep. 57. An equitable estoppel to be available as a defense must be specifically pleaded. 8 Enc. Pl. & Pr. 7; *Parliman* v. *Young,* 2 Dak. 184, 4 N. W. Rep. 711. None of the elements of an estoppel are here present. 7 Enc. Law, 12-17. Au estoppel is odious and if anything is left to inference it must be against the estoppel. 8 Enc. Pl. & Pr. 9 & 10. The Globe Investment Company in receiving the money was the agent of plaintiff and not of Stuart & Co. *Stark* v. *Olsen,* 63 N. W. Rep. 37-41.

*Winterer & Winterer,* for respondent.

. The note in this case was not a negotiable instrument within the meaning of the statute. §§ 4853, 4854 & 4859, Rev. Codes; *First National Bank* v. *Laughlin,* 4 N. D. 39; *Garretson* v. *Purdy,* 3 Dak. 178, 14 N. W. Rep. 100; *Hegler* v. *Comstock,* 45 N. W. Rep. 331, 1 S. D. 138; *Flagg* v. *School District,* 4 N. D. 30, 58 N. W. Rep. 499. The mortgage and note must be construed together as one contract, and the mortgage contains stipulations destroying its negotiability. *Lockrow* v. *Kline,* 46 Pac Rep. 720; *Brooks* v. *Struthers,* 68 N. W. Rep. 272.

Payment to the original payee of a non-negotiable instrument

without notice of the assignment, will satisfy the liability. *Lockrow* v. *Kline,* 46 Pac. Rep. 720. Intervener failed to record his assignment of mortgage, or to inform plaintiff that he owned the notes. *Jones* v. *Fidelity Loan & Trust Co., 63* N. W. Rep. 553, 7 S. D. 122; *Perkins* v. *Matheson,* 19 Pac Rep. 633; *Low* v. *Fox,* 9 N. W. Rep. 131. The privileged character of negotiable paper does not extend to the mortgage by which it is secured. *Hostetter* v. *Alexander,* 22 Minn. 559; *Johnson* v. *Carpenter, 7* Minn. 176.

CORLISS, C. J. The plaintiff, having once paid the mortgage upon his land, claims by this action a right to have the same discharged of record, and the note and mortgage surrendered to him. The fact of payment is undisputed. So is the fact that the payment was not made to the one who at the time thereof was the owner of the note and mortgage. Plaintiff therefore cannot justify the payment, as to the defendant, unless he can make out a case of estoppel as against such defendant. The note and mortgage were given by William Glass to the Globe Investment Company on the 21st of December, 1891. On the 14th of March, 1892, plaintiff purchased the mortgaged premises from Glass, and in his deed he assumed the payment of such mortgage. On the 26th of December, 1894, plaintiff paid the mortgage to the Globe Investment Company, the original mortgagee; but at this time such company was not the owner thereof, the note and mortgage having been previously transferred to the defendant, John Stuart & Co. Were there no other facts in this case, the payment would not protect the plaintiff against liability to pay the same debt to the defendant. It is true that with respect to ordinary choses in action the rule is that the assignee thereof, if he would prevent payment to the assignor by the debtor, must notify the debtor of the assignment. Any payment made by such debtor in ignorance of the assignment is a good payment of the claim. *Van Keuren* v. *Corkins,* 66 N. Y. 77; *Insurance Co.* v. *Smith,* 2 Barb. Ch. 82; *Reed* v. *Marble,* 10 Paige, 409; *Wanzer* v. *Cary,* 12 Hun. 403; *Bury* v. *Hartman,* 4 Serg. & R. 175; *Brindle* v. *McIlvaine,* 9 Serg. & R. 74; *Hodgdon* v. *Naglee,* 5 Watts & S. 217, 219; *Trustees* v. *Wheeler,* 61 N. Y. 88, 111; *Mitchell* v. *Burnham,* 44 Me. 286, 303, 304. This appears to be the law even in cases where the debt is evidenced by a written instrument. *Van Keuren* v. *Corkins,* 66 N. Y. 77; *Bury* v. *Hartman,* 4 Serg. & R. 175; *Brindle* v. *McIlvaine,* 9 Serg. & R. 74. But see *Brown* v. *Blydenburgh,* 7 N. Y. 141. On this latter point we do not, however, wish to express any opinion. With respect to negotiable paper the rule is different. The maker must, at his peril, ascertain at the time of payment whether the payee is still owner thereof. Although the purchaser of such paper does not notify the debtor of the fact of such purchase, and although the latter is ignorant thereof, still he is, in law, chargeable with notice of the rights of the purchaser, and therefore he pays the original creditor at his own risk. *Porter* v. *Ourada* (Neb.) 71

N. W. Rep. 52; *Eggert* v. *Beyer* (Neb.) 62 N. W. Rep. 57; *Brayley* v. *Ellis* (Iowa) 32 N. W. Rep. 254; *Windle* v. *Bonebroke,* 23 Fed. Rep. 165; *Burnhans* v. *Hutcheson,* 25 Kan. 625.

That the note in question was negotiable, we have no doubt. Its negotiability is attacked on two grounds: First, because it provides for a different rate of interest after maturity; second, because it contains a clause that, in case of default for ten days in the payment of interest, the whole of the principal may, at the option of the holder, become due. We regard it as settled law that the fact that the date of payment may be accelerated by the default of the debtor does not effect the negotiability of the paper. *Chicago Ry. Equipment Co.* v. *Merchants' Bank,* 136 U. S. 268; 10 Sup. Ct. 999; *Merrill* v. *Hurley* (S. D.) 62 N. W. Rep. 958; *Wilson* v. *Campbell* (Mich.) 68 N. W. Rep. 278; *Ernst* v. *Steckman,* 74 Pa. St. 13; *Cisne* v. *Chidester,* 85 Ill. 523; *Walker* v. *Woolen,* 54 Ind. 164; *De Hass* v. *Roberts,* 59 Fed. Rep. 853; 1 Daniel, Neg. Inst. § 48; *Roberts* v. *Snow,* 27 Neb. 425,, 43 N. W. Rep. 241.

It is also clear that the fact that the rate of interest was, after maturity of the note, to be higher, did not render the same nonnegotiable. *Merrill* v. *Hurley* (S. D.) 62 N. W. Rep. 958; *Towne* v. *Rice,* 122 Mass. 67; *Parker* v. *Plymell,* 23 Kan. 402; *Hope* v. *Barker,* 43 Mo. App. 632; *Crump* v. *Berdan,* 97 Mich. 293, 56 N. W. Rep. 559.

The note and mortgage appear to have been transferred to the defendant on the 2d of February, 1892. Plaintiff purchased the land, subject to the mortgage, on the 14th of March, 1892. Thereafter he paid the interest each year to the mortgagee, the Globe Investment Company, undoubtedly believing that it was still the owner of the security. He had no knowledge of the transfer thereof to the defendant, and after he had made his first payment of interest, and had obtained the interest coupon, he naturally assumed that he was correct in his belief. Each year's payment of interest could have only one effect; *i. e.* to strengthen this conviction. Who was responsible for this belief? The facts admit of only one answer to this inquiry. The defendant knew that it had not notified the plaintiff of the purchase by it of the note and mortgage. It plainly saw that plaintiff was dealing with the assignor as though it were still the owner of these papers. Each time it delivered to the assignor the interest coupons, on receipt of the money, and suffered the latter to surrender them to the plaintiff. Instead of sending such coupons directly to him itself, and thus dealing with him personally, it did an act which was, to its knowledge, tantamount to a representation by it to the plaintiff that it was not, but that the assignor was, the owner of the obligation. So long as it failed to disabuse his mind of this false impression for which it was responsible, he was justified, as against the defendent, in continuing to deal with the assignor as the real owner. And it follows

that the payment of the principal made by him to the assignor constitutes a good payment of the note and mortgage. Were there no element of estoppel in this case, the plaintiff would have to suffer the consequences of his own carelessness in paying a written instrument without demanding the production thereof at the time of payment; he being chargeable with knowledge of the fact that it might have been previously transferred. But while a purchaser of negotiable paper, and perhaps of any other written instrument, may safely remain silent, and can, despite the silence, insist that payments to the assignor shall not be charged against him, he cannot by his conduct create a belief in the mind of the debtor that the former owner is still the real owner, without being bound by all payments made by the debtor to such former owner while such belief remains unchanged. Our decision rests upon the elementary principle of equitable estoppel. We reach the same conclusion as the learned District Judge, but on a different ground. We are unable to discover in the case any question of ostensible agency. Before the plaintiff can claim that the defendant held the Globe Investment Company out to him as its agent, and therefore is estopped from denying such agency, he must be able to satisfy us that he dealt with such company believing it to be such agent because of the conduct of the defendant. Now, it is obvious from the facts of this case that plaintiff has at no time ever regarded the Globe Investment Company as defendant's agent at all. He has never known the defendant as the principal in the transaction. He has all the time proceeded on the theory, not that defendant was the owner of the securities, and the Globe Investment Company its agent, but that the latter was itself the owner thereof, and the only party interested in the matter, aside from himself.

The judgment of the District Court is affirmed. All concur.

ON REHEARING.

November 9, 1898.

BARTHOLOMEW, C. J. On petition of appellant a rehearing was ordered in this case, and, there having been a change in the members of the Court in the meantime, the case has been again fully agrued upon all points. But, as to all the points except the one hereinafter mentioned, we are satisfied with the opinion as it stands, and shall not notice them further. It is urged upon us, however, that in our former opinion we carried the doctrine of equitable estoppel in pais to an unwarranted length, and that the facts recited in the opinion do not constitute such estoppel, under the circumstances of this case; and, after a very careful consideration of the point, we have reached the conclusion that this contention must be sustained. What we regard as the general rule of law was correctly stated by Chief Justice Corliss in the original opinion, in these words: "Although the purchaser of such [negotiable] paper does not notify the debtor of the fact of such purchase, and although

the latter is ignorant thereof, still he is, in law, chargeable with notice of the rights of the purchaser, and therefore he pays the original creditor at his own risk." The authorities cited abundantly sustain the proposition. The principle has been further illustrated by many cases. *Williams* v. *Walker,* 2 Sandf. Ch. 325, involved kindred questions to those that arise in this case. There the money had been paid by the maker of the bond and mortgage to the solicitor who made the loan, and who for a time held the securities as agent for the payee, and received the interest thereon, but the payee had withdrawn such securities before the payment of principal was made. The payment was made in ignorance of such fact. The decision, as condensed in the syllabus, reads: "The debtor is authorized to infer that the solicitor or agent is empowered to receive both interest and principal, from his having possession of the bond and mortgage. But such inference, being founded upon the custody of the securities, ceases whenever they are withdrawn by the creditor; and it is incumbent upon the debtor who makes payments to the solicitor or agent, relying upon such inference, to show that the securities were in his possession on each occasion when the payments were made." In that case the chancellor reviewed the English and American authorities at length, commencing with *Henn* v. *Conisby,* 1 Ch. Cas. 93, decided in 1668, and following down to the date of the decision (1845); and all the authorities thus reviewed support the conclusion reached, except the single case of *Spencer* v. *Wilson,* 4 Munf. 130, which case, the chancellor says, "is either carelessly reported, or was a loose decision." The matter of hardship in requiring the debtor to pay the same debt twice was as apparent in the case reported in Sanford as in this case. The chancellor said: "This is a case of great and peculiar hardship,— one which I would gladly have relieved against, were it possible, consistent with the maintenance of sound and important rules of equity, and with dispensing exact justice to the equally innocent creditor." No question of negotiability was discussed in that case, and the rule requiring the production of the securities in order to protect a debtor who pays to an agent or a supposed agent applies equally whether the securities be negotiable or non-negotiable Mechem, Ag. §. 373, and cases cited; Jones, Mortg. § 964, and cases cited. In *Doubleday* v. *Kress,* 50 N. Y. 410, it was held that possession by a presumed agent of an unindorsed negotiable note was not sufficent to protect the debtor. The case of *Wilson* v. *Campbell* (Mich.) 68 N. W. Rep. 278, is strongly in point. The action was brought by a grantee of the original mortgage to enforce satisfaction of the mortgage of record. The defendant, Campbell, was an indorsee before maturity of the note secured by the mortgage, and held the note and mortgage in his possession. No assignment of the mortgage to him was of record. He forwarded the interest coupons to the Michigan Mortgage Company, Limited, for collection; and the interest was paid to said company by Wilson,

and the coupons delivered to him. Wilson also paid the principal to said company at about the date of the maturity of the note, by executing to said company a new mortgage and note. He testified that he supposed that the Michigan Mortgage Company, Limited, was the owner of the first note. The trial Court held Campbell estopped from denying the authority of the mortgage company to receive the money. The Supreme Court, in reversing the case, said: "In *Williams* v. *Keyes,* 90 Mich. 296, 51 N. W. Rep. 520, we held, following *Dutton* v. *Ives,* 5 Mich. 515, that the holder of a negotiable security is alone the one prima facie entitled to receive the payment, and the maker is not authorized to assume the negotiable paper secured by mortgage has not been transferred. See, also, 2 Jones, Mortg. § 957. However the failure to record the assignment may affect one subsequently deriving title or right through the mortgagee, the maker of a negotiable note secured by a mortgage cannot discharge his liability by payment to one not the holder, or authorized by the holder to receive payment. We are not able to discover that the defendant ever authorized the Michigan Mortgage Company, Limited, to collect the principal of this note, or to collect more than the interest coupons on the same being forwarded to it for the purpose. In this respect the case is so similar to others decided by this Court that we think it unprofitable to discuss this feature here at length. See *Joy* v. *Vance* (Mich.) 62 N. W. Rep. 140, and cases cited; *Bromley* v. *Lathrop* (Mich.) 63 N. W. Rep. 510; *Trowbridge* v. *Ross* (Mich.) 63 N. W. Rep. 534." To exactly the same effect see *Richards* v. *Waller* (Neb.) 68 N. W. Rep. 1053; *Stark* v. *Olsen* (Neb.) 63 N. W. Rep. 37. In *Bronson* v. *Ashlock* (Kan. App.) 41 Pac. Rep. 1068, the note and mortgage were executed by Ashlock. The Guarantee Investment Company was the payee. Bronson was an indorsee before maturity. Hill was Ashlock's grantee. Bronson brought an action to foreclose. Hill answered, setting up payment to the investment company by Ashlock. The evidence showed the payment of the principal to the investment company before maturity. Bronson held the note and mortgage, but forwarded the coupons to the investment company for collection, and upon payment they were delivered by said company to Ashlock. Ashlock had no knowledge of the transfer to Bronson. The trial Court held Bronson estopped by the payment to the investment company. The Supreme Court reversed, and said: "In this case there is nothing to show that the investment company had possession or claimed possession or control of the note and mortgage after their transfer to Bronson in 1887. The payment under such circumstances was made wholly at the risk of the payor." The Court cites a large array of authorities on the point. There is some very pertinent language in *Murphy* v. *Beard* (Mass.) 38 N. E. Rep. 32. There the original maker of the note paid to the original payee, supposing his ownership to continue. The payee had collected

the interest on the note. The maker sought to charge the holder with payment through an authorized, or at least an ostensible, agent. The Court said: "But we need not consider that question, because it does not arise upon the facts. The plaintiff was unacquainted with the fact that the mortgagee was an agent of some owner of the note, and was not thereby induced to make payments. He made them solely because he himself assumed, without inquiry, and without any representations made, and without requiring the production of the note, that the mortgagee continued to be its holder and owner; and he dealt with him as owner, and not as an agent." Again the Court said: "Nor is the case one where, if one of two innocent persons must suffer from the wrongful act of a third, the plaintiff should be relieved from the consequences of his payment to the wrong party. The owner of the note was not the cause of his making the payments, and did not induce him to make them, but he acted solely upon his own supposition that the mortgagee was himself the owner of the note and mortgage."

It has been suggested that the fact that the note in this case was made payable at the office of the Globe Investment Company, in Boston, made that company the agent of any holder of the note for the purpose of receiving payment, if tendered at that office. Such is not the law. If a negotiable note be made payable at a particular place, such provision is so far an agreement on the part of the holder to have the note at the specified place at maturity, that, if the maker be there with the money to make the payment, and make a proper deposit, he is relieved from all further obligation to seek the holder. He cannot be charged with costs, and interest will cease from that date. If the holder has seen proper to place the note in the designated place, then the person in charge becomes the agent of the holder to receive the money and deliver the note to the maker. But, if the note be not so deposited, then no authority exists in the person in charge to receive the money. *Ward* v. *Smith,* 7 Wall. 447; *Pease* v. *Warren,* 29 Mich. 9; Daniel, Neg. Inst. § § 325, 326. In the case at bar the evidence shows that intervener sent the coupon notes to the Boston office of the Globe Investment Company, and when they were paid said company delivered them to respondent. We may admit that respondent was an entire stranger to intervener, and that he made such payments fully believing that such company was the owner of the note and mortgage. We may go further, and admit that intervener knew, or might reasonably suspect, that respondent was so dealing with the investment company That fact cannot estop intervener. Respondent knew the note was negotiable, and that the quality of negotiability would adhere to it every minute until it reached maturity. He knew it was intended to pass from owner to owner by indorsement, and that it was liable thus to pass at any moment, and he knew that the last person thus receiving it could require at his hands the full amount of the note. That the note belonged,

or he thought it belonged, to the Globe Investment Company when one coupon matured furnished him no warrant for believing that it would belong to the same party when the next coupon matured, or when the principal fell due. He had in his own hands the means of absolute protection. He had only to see to it that he received his note when he paid his money. If he neglected this simple requirement, demanded not more by the law than by common prudence, he paid at his peril; and, if loss occurs, he must bear it. One party or the other must suffer, and he, being the party in fault, must bear the burden.

These views lead to an entirely different result from that heretofore announced. Perhaps we ought to say that the rehearing in this case was ordered largely at the instance of the late Chief Justice Corliss. Before his resignation from the bench he reached substantially the conclusion we here announce. Our former order of affirmation is set aside, and the District Court of Barnes County is directed to enter judgment and decree of foreclosure in the usual form in favor of intervener, John Stuart & Co., Limited, and against the plaintiff, Charles Hollinshead, as prayed in the petition of intervener, with costs of both courts to intervener.

Reversed. All concur.
(77 N. W. Rep. 89.)